795 A.2d 297 (2002)
350 N.J. Super. 335
STATE of New Jersey, Plaintiff-Respondent,
v.
Edward C. BISHOP, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted March 27, 2002.
Decided April 24, 2002.
*299 Peter A. Garcia, Acting Public Defender, attorney for appellant (Edgar F. Devine, Jr., Waldwick, Designated Counsel, of counsel and on the brief).
John Kaye, Freehold, Prosecutor Monmouth County, attorney for respondent (Barbara Suppa, Assistant Prosecutor, of counsel and on the brief).
Appellant filed a pro se supplemental brief.
Before Judges BAIME, NEWMAN and FALL.
*298 The opinion of the court was delivered by NEWMAN, J.A.D.
Defendant, Edward C. Bishop, appeals from an order denying his petition for post-conviction relief. We affirm.
On April 24, 1979, a Monmouth County Grand Jury returned an eight count indictment against defendant that charged him with rape, N.J.S.A. 2A:138-1 (count one); assault with intent to rape, N.J.S.A. 2A:90-2 (count two); atrocious assault and battery, N.J.S.A. 2A:90-1 (count three); breaking and entering with the intent to rape, N.J.S.A. 2A:94-1 (count four); sodomy, N.J.S.A. 2A:143-1 (count five); assault with intent to sodomize, N.J.S.A. *300 2A:90-2 (count six); atrocious assault and battery, N.J.S.A. 2A:90-1 (count seven); and breaking and entering with the intent to sodomize, N.J.S.A. 2A:94-1 (count eight). The crimes for which defendant was charged occurred on November 10, 1978 (counts one through four) and on May 18,1978 (counts five through eight).
After a jury trial, on October 4, 1979, defendant was found guilty of the events that occurred on November 10, 1978, namely: rape, assault with the intent to rape and atrocious assault and battery. The jury acquitted him of the charges relating to the events of May 18, 1978.
On October 15, 1979, defendant moved for a new trial alleging: (1) Blacks were inadequately represented on the jury, and (2) trial error arising from (a) testimony relating to defendant's "mug shot," (b) the testimony and report of the State's chemist, (c) the Prosecutor's improper statements during summation and improper cross examination of a witness, and (d) the jury's verdict was a compromise. The court denied defendant's motion. Defendant did not appeal that order or appear for sentencing. Instead, he fled to Belize where he remained for eighteen years. In 1997, defendant was arrested in Belize and extradited to the United States.
Upon his return, defendant made another motion for a new trial. In denying the motion on April 24, 1998, Judge Theodore J. LaBrecque, Jr. had this to say:
I'm satisfied that a motion for a new trial was made and decided on the merits. And this motion for new trial, as far as it addresses the merits, because it says we can't address the merits because we don't have a transcript, is basically moot because the merits in fact have been addressed previously. And I feel bound by Judge Cunningham's ruling.
As far as the lack of a record, I too agree that that's for an appellate tribunal to make a determination. It is obvious here that if the record is inadvertently lost it cannot be reconstructed. And if it cannot be reconstructed, the victim is dead and the matter can never be retried.
So I leave that to the Appellate courts to decide whether someone who has been a fugitive for 19 years, and through his own efforts has basically caused this situation of the inadvertent losing of a record and the inability because of the passage of time and the destruction of defense counsel's records, the inability to reconstruct the record, of whether or not he should be able to take advantage of that. Accordingly, the application is denied.
Defendant elected to be sentenced under the Code of Criminal Justice. The court then sentenced defendant to fifteen years with a four year parole disqualifier for the rape conviction. The court also denied defendant jail credit for the time he spent in custody in Belize resisting extradition. The remaining counts were merged.
Defendant appealed both the judgment of conviction and his sentence. On direct appeal, defendant contended that (1) his motion for a new trial should have been granted; (2) he was entitled to jail credit for the custodial time spent in Belize resisting extradition; and (3) his sentence was manifestly excessive. According to the argument before Judge LaBrecque, defendant argued for reconstruction of the trial transcripts, but did not set forth the reconstruction argument in a separate point heading as required by R. 2:6-2(a)(5).
This court held defendant was entitled to credit for the time he spent in a Belize jail fighting extradition, but rejected defendant's remaining contentions as lacking *301 merit pursuant to R. 2:11-3(e)(2). State v. Bishop, No. A-5800-97T3, slip op. (App. Div. June 30, 1999). The Supreme Court denied defendant's petition for certification. State v. Bishop, 162 N.J. 487, 744 A.2d 1209 (1999).
Thereafter, defendant filed a pro se petition for post-conviction relief alleging ineffective assistance of counsel and requesting a plenary hearing. Defendant set forth three arguments in his pro se petition in support of his PCR application: (1) ineffective assistance of counsel, (2) insufficiency of the evidence, and (3) spoliation of scientific evidence. Through appointed counsel who filed an amended petition defendant also asserted that (4) he was entitled to have the trial reconstructed pursuant to R. 2:5-3(f), (5) the State's failure to release the results of victim's polygraph test constituted a Brady[1] violation, (6) the Prosecutor made improper statements before the grand jury, and (7) the counts in the indictment relating to the events of May 18, 1978 and November 10, 1978 should have been severed. The State opposed defendant's application. On October 13, 2000 the court denied defendant relief.
In regard to the lack of record, Judge LaBrecque observed that in denying defendant's previous motion for a new trial he had specifically left it to this court to decide whether someone who had been a fugitive and, consequently created the inability to reconstruct a trial record, should be allowed to move for a new trial on those grounds. He noted:
The factual presentation that the court is faced with over 21 years after the event is as follows. The victim has died. The court reporter's notes cannot be located therefore no transcript could be used at any potential retrial. The court reporter is deceased. The defense attorney destroyed his file in the early 1990's, including his trial notes. The prosecutor who prosecuted the case left the office over 20 years ago. The judge retired 14 years ago and is now 84 years old. And the court file was stripped and microfiched and the judge's trial notes are missing from the court file.
Against that backdrop, Judge LaBrecque addressed defendant's argument that the lack of trial transcripts was a denial of his fundamental rights of due process.
This allegation alleges firstly that the defendant was denied due process of law when his appellate counsel failed to request a reconstruction of the trial record. I truly believe that this has already been raised and been before the Appellate Division in his direct appeal and therefore is barred to relitigate the issue here.
In fact he litigated in the Appellate Division the fact that his motion for a new trial should have been granted on the grounds of the lack of a transcript and the lack of a reconstruction. The State in fact argued otherwise. Here he cites State v. Izaguirre[2] ... where the trial record two weeks after the trial was lost. Both counsel had their trial notes, the court had its trial notes, and they spent approximately a month reconstructing the record.
Here the Appellate Division was aware that there was no record and they rejected his argument of the sufficiency of evidence. I'm satisfied that in fact that argument has been disposed of and cannot be relitigated here. We have no way of reconstructing the record in any *302 event. And the reason we have no way of reconstructing it is because he was gone for 18 years. Therefore it is not a denial of due process and it's no one's fault but his own.
Judge LaBrecque also disposed of defendant's remaining arguments. As for defendant's ineffective assistance of counsel claim, the judge found that defendant could not establish a prima facie case for that claim. Defendant alleged that the outcome of the trial itself established the incompetence of his trial counsel. His allegation was based upon the sufficiency of the evidence. The judge observed that defendant raised that issue on direct appeal, and that this court found it lacked merit. Accordingly, the judge concluded that R. 3:22-5 barred relitigation of that claim.
Defendant's claim of spoliation of scientific evidence was also procedurally barred. The judge determined that defendant was again challenging the sufficiency of the evidence and, therefore, R. 3:22-5 barred that claim. Alternatively, the judge noted that if defendant was attempting to challenge the admissibility of that evidence, he should have raised that challenge on direct appeal. Thus R. 3:22-4 also barred that claim.
The judge found that defense counsel's failure to sever the counts of the indictment to be a trial tactic. The State's case for the events of May 18, 1978 was apparently weaker than the State's case regarding the events of November 10, 1978. He noted that defense counsel used the weaker case to challenge the credibility of the victim. The judge also observed that the jury found defendant guilty of the November charges but acquitted him of the May charges.
The judge then found that the prosecutor's failure to advise the grand jury of the victim's polygraph test did not deny defendant his due process rights. In that regard, relying on State v. Hogan, 144 N.J. 216, 676 A.2d 533 (1996), Judge LaBrecque commented that a prosecutor has a limited duty to present exculpatory evidence to grand juries. The judge found that the polygraph test of the victim was not clearly exculpatory, noting that the victim passed the test and that the test was not admissible as trial evidence. He concluded, therefore, that the prosecutor did not violate the precepts of Brady, supra.
In regard to the comment made by the prosecutor of defendant's mug shot before the grand jury, Judge LaBrecque observed that the jury verdict cured that defect. He relied on Hogan, supra, and acknowledged that while the prosecutor mentioned the words "mug shot" before the grand jury that reference did not result in a manifestly deficient or palpably defective indictment.
Judge LaBrecque also found that disposal of the physical evidence after the defendant's conviction did not violate his due process rights. He noted that the State disposed of the evidence in good faith, the evidence was not material to the defense and defendant was not prejudiced by its disposal. Specifically, he found that the evidence was disposed of as part of routine practice employed in 1979 and 1980. Further, at trial defendant did not deny that he had sexual intercourse with the victim but claimed that it was consensual. Thus, Judge LaBrecque found that DNA testing of the physical evidence would not have assisted defendant's claim of consensual sex.
After addressing the merits of defendant's PCR petition, Judge LaBrecque commented that R. 3:22-12 barred defendant's petition. He explained that the rule provides a five year limitation period for the filing of PCR petitions. The period is *303 calculated from the date the judgment of conviction is entered. Absent a showing of excusable neglect for the delay the rule bars petitions filed late. Judge LaBrecque acknowledged that defendant's petition was facially within the time limit. He declared that legally and equitably the case was twenty-one years old and, therefore, the petition was time barred. He concluded that the judgment of conviction was postponed until April 29, 1998 only because defendant fled the country. Therefore, he opined that the five year time limit should apply to bar defendant's PCR petition irrespective of when the actual judgment of conviction was entered.
On appeal, defendant raises the following issues for our consideration:
POINT I THE LOSS OF THE STENOGRAPHIC NOTES FROM DEFENDANT'S 1979 TRIAL, PREVENTING EVEN THE SEMBLANCE OF AN EFFECTIVE REVIEW OF HIS TRIAL ON APPEAL OR PETITION FOR POST-CONVICTION RELIEF, IS A DUE PROCESS VIOLATION REQUIRING AT A MINIMUM THE GRANT OF A NEW TRIAL OR, IF THAT IS IMPOSSIBLE, VACATION OF DEFENDANT'S CONVICTION AND DISMISSAL OF THE CHARGES.
POINT II THE CLAIMS OF ERROR RELIED BY DEFENDANT AND DEFENSE COUNSEL AT THE TRIAL LEVEL IN THE PCR PROCEEDING, COLORABLE ON THEIR FACE, SIMPLY CANNOT BE REVIEWED IN ANY FASHION CONSISTENT WITH DUE PROCESS IN THE ABSENCE OF A RECORD. THOSE ARGUMENTS ARE NOT BEING ABANDONED, HOWEVER, BUT ADOPTED HERE.
Defendant in his pro se brief raises the following point: POINT ONE:
AN EVIDENTIARY HEARING IS REQUIRED FOR DEFENDANT WHERE EXISTING EVIDENCE ESTABLISHED SURROUNDING HIS TRIAL THAT CONCLUDED SIGNIFICATION AND PROOF BY TEST OF THE NEW JERSEY STATE POLICE ALL INCONCLUSIVE TO SUPPORT FINDING.
After careful review of the record and the briefs submitted, in light of the applicable law, we are convinced that Judge LaBrecque correctly disposed of the errors claimed at the trial level that there was no basis established to hold an evidentiary hearing. State v. Preciose, 129 N.J. 451, 459, 609 A.2d 1280 (1992). We, therefore, affirm substantially for the reasons expressed by Judge LaBrecque in his oral opinion of October 13, 2000. We, however, deem it appropriate to comment further on whether R. 3:22-12 barred defendant's PCR petition and whether defendant has been deprived of his due process right to meaningful appellate review where the transcript of his trial is unable to be reconstructed.

I.
On appeal, the State contends that R. 3:22-12 bars defendant's PCR petition and should result in the dismissal of this appeal. The State maintains that the "exceptional circumstances" of this case justify the application of the time-bar of that rule. Specifically, the State argues that defendant's PCR petition should be barred because the more than eighteen years' delay from conviction to sentencing was the result of defendant's flight from justice.
Rule 3:22-12 provides the general rule that a petition for post conviction relief must be filed no more than five *304 years after rendition of the judgment or sentence sought to be attacked unless sufficient facts are alleged to show that delay beyond said time was due to defendant's excusable neglect. The five year period prescribed by that rule commences when the judgment of conviction is entered rather than the return of the jury verdict. State v. Riley, 216 N.J.Super. 383, 523 A.2d 1089 (App.Div.1987); State v. Jenkins, 221 N.J.Super. 286, 293, 534 A.2d 421 (App.Div.1987), certif. denied, 113 N.J. 343, 550 A.2d 456 (1988), cert. denied, 488 U.S. 1032, 109 S.Ct. 843, 102 L. Ed.2d 975 (1989). A judgment of conviction is a formal document, signed by the judge and entered by the clerk, that includes the verdict and the court's sentence. R. 3:21-5; State v. Moore, 178 N.J.Super. 417, 427, 429 A.2d 397 (App.Div.), certif. denied, 87 N.J. 406, 434 A.2d 1083 (1981). The jury verdict against defendant was not a final, formal determination of his guilt until defendant was sentenced and, therefore, the verdict itself was not a final judgment of conviction.
Moreover, R. 3:22-3 prohibits the filing of a PCR petition while appellate review of a conviction is available. Until entry of the judgment of conviction, the court cannot impose a sentence. State v. Neff, 67 N.J.Super. 213, 217, 170 A.2d 456 (App.Div.1961). A court also cannot impose a sentence in defendant's absence. Ibid. Without a sentence an appeal would be premature. Ibid. Here, appellate review was not available until April 24, 1998, when the court sentenced defendant and entered the judgment of conviction. Defendant's petition was filed within the five year limitation period of R. 3:22-12.
Notwithstanding, the State argues to apply the general rule of R. 3:22-12 would lead to an unjust result. The State contends that defendant's self-imposed delay in sentencing should bar his right to petition for post conviction relief. Thus, the State seeks, pursuant to R. 1:1-2, relaxation of the judgment of conviction requirement of R. 3:22-12. Rules and their exceptions should be cautiously and faithfully applied to the circumstances of each case. State v. Mitchell, 126 N.J. 565, 589, 601 A.2d 198 (1992).
There is no exception to the final judgment requirement of R. 3:22-12. Instead, that rule only bends in favor of a defendant to allow for the late filing of a PCR petition. The objective of R. 3:22-12 is to "strongly encourag[e] those believing they have grounds for post-conviction relief to bring their claims swiftly, and [to] discourag[e] them from sitting on their rights until it is too late for a court to render justice." Mitchell, supra, 126 N.J. at 576, 601 A.2d 198. In order to swiftly prosecute a defendant's claim, the defendant must first be aware of those claims. That is not possible until the entry of a final judgment of conviction. Until then, the judge may entertain motions to overturn the jury verdict and grant a new trial. See R. 3:20-1.
Moreover, this court has held that a defendant's fleeing from justice, which caused more than two years' delay from date of conviction to sentence, did not bar defendant from timely appealing from the date sentence was imposed. Neff, supra, 67 N.J.Super. at 217-218, 170 A.2d 456.
Rule 3:22-12 did not bar defendant's PCR petition. However, the judge's comments were made after he addressed and rejected the merits of defendant's petition. Any error did not warrant reversal. R. 2:10-2.

II.
In general terms, defendant asserts that he is disadvantaged by the lack of a trial transcript and that disadvantage has *305 deprived him of his due process rights for meaningful review of his conviction. Defendant argues that he should, therefore, be afforded a new trial or, if that is not possible, the conviction vacated and the charges dismissed.
Defendant's assertion on appeal that he cannot be comfortable with the appellate process without saying in what way the absence of a transcript has deprived him of his due process rights is inadequate to raise a claim of constitutional magnitude. State v. Gaines, 147 N.J.Super. 84, 93, 370 A.2d 856 (App.Div.1975), aff'd sub nom, State v. Powers, 72 N.J. 346, 370 A.2d 854 (1977) (generalized allegations of infringements of a constitutional right do not create a claim of constitutional dimensions, are ill-advised and improper in appellate practice).
Moreover, in cases where portions of the trial were missing, this court has placed a duty upon the defendant to show both an exercise of due diligence to correct the deficiency in the record and prejudice from the incompleteness of the record. State v. Paduani, 307 N.J.Super. 134, 142, 704 A.2d 582 (App.Div.), certif. denied, 153 N.J. 216, 708 A.2d 67 (1998). We have also recognized that there is no per se difference between situations where only portions of the trial need be reconstructed and where the entire trial transcript was lost. Izaguirre, supra, 272 N.J.Super. at 56, 639 A.2d 343. In cases where the entire transcript is missing a defendant must also show both an exercise of due diligence and resulting prejudice. Defendant has not made either showing but, instead, offers this court a general allegation of a due process violation. That is insufficient to raise a constitutional claim.
Due process of law includes a guaranty of a fair trial. See Ibid. The absence of a verbatim record merely raises a question of fairness that must be addressed. Ibid. It does not render a trial unfair. Ibid. When the verbatim record is lost, it is the duty of the trial judge as a matter of due process to reconstruct the record in a manner sufficient to provide a reasonable assurance of accuracy and completeness. R. 2:5-3(f); State v. Casimono, 298 N.J.Super. 22, 25, 688 A.2d 1093 (App. Div.1997), certif. denied, 154 N.J. 609, 713 A.2d 500 (1998); Izaguirre, supra, 272 N.J.Super. at 56-57, 639 A.2d 343. However, it is not the sole responsibility of the trial judge to reconstruct the record. Casimono, supra, 298 N.J.Super. at 25, 688 A.2d 1093. Instead, reconstruction of the record is a "participatory process" involving the court and counsel. Ibid. Defendant also has a duty to attempt to reconstruct the record. Paduani, supra, 307 N.J.Super. at 142, 704 A.2d 582 (citing State v. Bates, 84 Hawai'i 211, 933 P.2d 48, 54 (Haw.1997) (failure of defendant to attempt reconstruction of record precludes him or her from alleging reversible error)). See also R. 1:2-2, Pressler, Current N.J. Court Rules, comment 3 (Reconstruction of record).
However, because of the circumstances caused by defendant's flight from justice and resultant delay between jury verdict and sentence and through no fault of the State, the record cannot be reconstructed. Considering the death of the victim, disposal of evidence and retirement of the judge and prosecutor, a new trial is not a viable option. Thus, the question presented is whether defendant should reap the benefit of his fugitive status by obtaining a vacation of his conviction due to the transcript's absence.
This precise issue was recently addressed in Commonwealth v. Johnson, 764 A.2d 1094 (Pa.Super.Ct.2000), appeal denied, 566 Pa. 637, 781 A.2d 141 (Pa.2001). There, defendant was arrested on March 28, 1987 of robbery, conspiracy and burglary. *306 Id. at 1095. Defendant was released on bail and attended part of his trial until he fled the jurisdiction. Ibid. The trial continued without his presence. Id. at 1096. On November 17, 1987, the jury found the defendant guilty in absentia.
Post-verdict motions were filed, but were not ruled upon due to the defendant's fugitive status. Ibid. Sentencing was deferred while defendant remained a fugitive for the next ten years. Ibid. Defendant was apprehended in 1997. At that time the judge who presided over the defendant's trial had retired, and another judge sentenced the defendant. Ibid. The defendant appealed his sentence and petitioned for reconstruction of the trial transcript, which had been lost or destroyed since his conviction. Ibid. The appeals court allowed the defendant to reconstruct the trial transcript pursuant to Pa.R.A.P. 1923, a rule of procedure similar to our R. 2:5-3(f). The defendant did not use his opportunity to recreate the trial record, but attempted to explain his fugitive status. Johnson, supra, 764 A.2d at 1096.
The Commonwealth also filed a statement in which it indicated that the trial judge had retired and the tape recording of the trial transcript had been lost during the ten year period the defendant was a fugitive. Ibid. Further, the defendant's trial counsel died. Id. at 1098. Upon reviewing the statements the trial court filed an opinion wherein it decided that it would not conduct further hearings. Id. at 1097. The appeals court ordered the trial court to conduct a hearing for reconstruction of the record. Ibid. At that hearing the defendant did not present witnesses or evidence. The trial court made a factual finding that the defendant had voluntarily absented himself from the jurisdiction, was properly tried in absentia and concluded that he had waived his right to appeal the jury's verdict. Ibid.
On appeal, the court concluded that defendant had not waived his post-trial appellate rights. Id. at 1098. The court observed that the defendant was sentenced after he was found in 1997 and filed a timely appeal. Ibid. The court reasoned, the defendant was not denied his "`appellate rights' per se." Ibid. Rather, the problem was that the defendant could not contest the conduct of the trial because of the trial transcript's absence. Ibid.
Similar to this case, the defendant argued that the absence of the transcript precluded meaningful appellate review and, therefore, entitled the defendant to a new trial. Ibid. The appeals court disagreed. It reasoned that the inability to reconstruct the trial record was due solely to the defendant's fugitive status. Ibid. The court concluded that the trial transcript would have been available if the defendant requested it after the conclusion of the trial. Ibid. The defendant's flight resulted in the loss of the transcript. Ibid. Since that time, the court noted, memories of the trial languished and people were unavailable. Ibid. The inability to reconstruct the record also resulted from defendant's flight.
The court held that the defendant could not obtain a new trial because of the transcript's absence. The court based that decision on the proposition that the law should not allow a person, here a fugitive, to take advantage of his own wrong. Johnson, supra, 764 A.2d at 1099 (citing Diaz v. United States, 223 U.S. 442, 457-458, 32 S.Ct. 250, 56 L.Ed. 500 (1912); Commonwealth v. Deemer, 550 Pa. 290, 705 A.2d 827, 829 (1997)).
So too here. A grand jury indicted defendant. He was tried before a jury at which time he was represented by counsel who, after the guilty verdict, moved for a new trial where he challenged the jury *307 selection system, the verdict and alleged trial errors. The court denied that motion. Instead of facing the consequences, defendant fled the country. Defendant's trial transcript would have been available in 1979 if he stayed and ordered it after the conclusion of the trial. Even if it was not available, the trial court and counsel could have effectively undertook to reconstruct the record when memories were fresh and trial notes available. R. 2:5-3(f).
The events that transpired during defendant's fugitive status preclude the reconstruction of the record. The victim has died. The court reporter is also deceased, and the trial notes are lost. In the early 1990's the defense attorney destroyed his file along with his trial notes. The attorney that prosecuted the case entered private practice over twenty years ago. The trial judge, who is now over eighty-four years of age, retired over fourteen years ago, and his notes are missing from the court file, which was placed on microfilm. Defendant should not reap the benefits of his dereliction.
A vacation of his conviction is also not warranted. This determination corresponds to and is consistent with the settled practice of dismissing a fugitive defendant's appeal, State v. Canty, 278 N.J.Super. 80, 82-83, 650 A.2d 391 (App. Div.1994), and will serve to further the policies underlying that practice. Those polices are (1) to avoid rendering an unenforceable judgment, (2) to avoid considering an appeal the right to which has been waived, and (3) to deter escapes from justice and advance "an interest in efficient, dignified appellate practice." Id. at 83, 650 A.2d 391 (citing Ortega-Rodriguez v. United States, 507 U.S. 234, 242, 113 S.Ct. 1199, 1204, 122 L. Ed.2d 581, 593 (1993)). The first two policies are not implicated because this court has accepted jurisdiction and defendant has filed a timely appeal.
Furtherance of the third policy requires that defendant not be permitted to gain an advantage through his fugitive status. While escape is contempt of the court's order of confinement, State v. Prince, 140 N.J.Super. 418, 420, 356 A.2d 428 (App. Div.1976), and is a separate crime punishable under the Code of Criminal Justice, Canty, supra, 278 N.J.Super. at 84, 650 A.2d 391, the penalties attendant to a conviction for escape are not an adequate deterrent in this case. Defendant was found guilty of rape, an offense that carried a maximum period of incarceration of thirty years. N.J.S.A. 2A:138-1. Defendant moved for a lesser sentence under the option provided by the Code of Criminal Justice, N.J.S.A. 2C:1-1c(2), and was sentenced to a fifteen-year custodial term with a four year parole disqualifier. A conviction for escape is a crime of the seconddegree, N.J.S.A. 2C:29-5, that carries discretionary penalties, N.J.S.A. 2C:43-2, or imprisonment between five and ten years, N.J.S.A. 2C:43-6(a)(2). A new trial cannot be had, and the public's interests in deterring such crime will not be vindicated.
A vacation of defendant's conviction without the possibility of a new trial would provide the means for a fugitive defendant to obtain a substantially reduced sentence. Not only would that fail as a deterrent, but it would also interfere with the appellate process. Absent a transcript or a means to reconstruct the record, a defendant, like defendant here, could simply file an appeal so as to have his conviction vacated. Where the inability to reconstruct the record is due to a defendant's conduct and through no fault of the State, the court should not presume error, but instead should presume that the trial was conducted properly. Smith v. State, 770 So.2d 652, 653 (Ala.Crim.App. *308 2000) (where appellant has duty to submit record on appeal, and where that record is incomplete, presumption exists "that what ought to have been done was not only done, but rightly done").
This court has determined that a defendant's legal rights may be adversely affected by the passage of time while he or she was a fugitive. State v. Fisher, 305 N.J.Super. 216, 220, 701 A.2d 1314 (App. Div.1997), aff'd in part, modified in part, 156 N.J. 494, 721 A.2d 291 (1998). Thus, the fugitive defendant should take the criminal justice system as found upon the fugitive's return. As illustrated here, this determination will not affect a defendant's appellate rights per se. Those rights will only be limited by the events that transpired during the defendant's absence. In this case, upon defendant's return to this State, defendant moved for a new trial. The motion was denied, and he was sentenced. Defendant filed a timely direct appeal, which this court heard, and received additional jail credits although his conviction was affirmed. He was then allowed to file a PCR petition. The only constraint placed on defendant's appellate process was the limitation on the contentions he could raise relating to the conduct of trial due to the absence of the trial transcript. That limitation will not present itself to every absent defendant.
For example, it is not certain that trial transcripts will be lost because of a defendant's flight, and if they are lost they may be reconstructed. Even then, depending upon the appeal, review may not be impossible. For instance, given the type of error alleged in this case, we were able to entertain defendant's direct appeal and the trial court addressed defendant's PCR petition. Specifically, the sentencing transcript allowed this court to entertain defendant's excessive sentence argument. Defendant's ineffective assistance of counsel claim, based on trial counsel's failure to sever the counts of the indictment, was reviewed and dismissed as a trial tactic. Similarly, his contention of prejudice from the disposal of evidence was also reviewed and dismissed as inconsistent with his trial defense of consensual sex. Finally, his allegations of prosecutorial misconduct during the grand jury indictment were also reviewed and rejected. Despite defendant's contempt for our criminal justice system it continued to afford him the means to pursue relief. Plainly stated, defendant may have limited his own due process rights, but the justice system did not violate those rights.
The order denying post-conviction relief is affirmed.
NOTES
[1] Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L. Ed.2d 215 (1963).
[2] State v. Izaguirre, 272 N.J.Super. 51, 639 A.2d 343 (App.Div.), certif. denied, 137 N.J. 167, 644 A.2d 615 (1994).